.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Agustine Vasquez-Mendoza,<br>Petitioner<br>-vs-<br>Charles L. Ryan, *et al.*,<br>Respondents. | CV-12-1189-PHX-PGR (JFM)<br><br>**Report & Recommendation on**<br>**Petition for Writ of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Tucson, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 5, 2012 (Doc. 1).  Following rulings on a motion to dismiss or hold in abeyance, Respondents filed an Answer on October 22, 2013 (Doc. 30), and a Supplemental Answer (Doc. 35) on April 3, 2014.  Petitioner filed his Reply on November 20, 2013 (Doc. 31), and a Supplemental Reply (Doc. 38) on May 19, 2014.

The Petition is now ripe for consideration.  Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

On July 11, 1994, Petitioner and three co-defendants were indicted in a ten count Indictment (Exhibit A), arising out of a drug related transaction that resulted in the murder of a special agent of the Drug Enforcement Agency.  (Exhibits to the Answer,

1

Doc. 30, are referenced herein has "Exhibit ___." Exhibits to the Supplemental Answer, Doc. 35, are referenced herein as "Exhibit S-___.")     In his Opening Brief on direct appeal, Petitioner summarized the facts "in the light most favorable to the jury's verdict" as follows:

> Although brothers Joaquin and Waldemar Fenior worked as auto mechanics, their principle source of income from 1991 or 1992 until 2005 was as informants for various governmental agencies. Between them they earned over $131,000 for regularly reporting what they perceived as suspicious drug activities of their employers and neighboring businesses.
>
> Appellant had some dealings with the owner of an auto repair shop near the Feniors' auto shop in a business park at 51st Avenue and Bethany Home Road. Appellant got to know the Feniors, and Joaquin agreed to sell Appellant his interest in the shop in May 1994 for a van. The Feniors arranged a drug purchase between Appellant and a Drug Enforcement Agency (DEA) agent. Richard Fass, a DEA agent, posed as a purchaser and met with Appellant at the shop where they arranged a sale of 22 pounds of crystal methamphetamine to take place the next day, June 30, 1994.
>
> Two of Appellant's associates were to meet with Fass at the shop and verify that Fass had brought the money.  Once they saw the money, they were to call Appellant, who would bring the drugs to the shop.
>
> One of the associates said that the plan was to rob Fass of the money. He said that Appellant did not have $160,000 of crystal methamphetamine to sell to Fass, and he and Appellant covered garden stones with paper torn from telephone books to make them look like rocks of methamphetamine.
>
> According to the Feniors, Fass and another agent arrived at the shop at the appointed time, around 6:00 p.m. The other agent sat in a truck parked near the door and "flashed" a bag of money for the associates to see; one of them then called Appellant. The associates then had the Feniors and Fass go back into the shop and they waited in the air-conditioned office for Appellant's arrival. Shortly thereafter, one of the associates directed Fass and the Feniors into an inner office area, told them to lay on the floor, pointing a gun or guns, which one of the co-defendants said Appellant had supplied them, to get them to comply with his directive.
>
> According to the Feniors, one of the men produced handcuffs and directed Fass to place them on his wrists. Suddenly, gunfire broke out; Fass's hand was injured but he apparently got off at least one shot, which wounded one of the associates.  Fass sustained several gunshot wounds, one of which was fatal.  The two associates ran from the scene but were later apprehended by the police.
>
> Appellant and another associate were on the way to the buy with the fake drugs when Appellant saw police cars surrounding the area of the auto shop.  Appellant remarked that something must have gone wrong and drove away to a house in Surprise. The associate heard Appellant say he was going to Mexico.

(Exhibit D, Opening Brief at 3-5.)

Petitioner was eventually arrested in Mexico, and extradited to the United States, making his initial appearance on February 7, 2005.  (Exhibit H, M.E. 3/9/11.)  "The State charged Vasquez-Mendoza with conspiracy to commit armed robbery, first-degree murder, aggravated assault, kidnapping, and attempted armed robbery."  (Exhibit E, Mem. Dec. 1/31/08 at 2; Exhibit A, Indictment.)

Following a jury trial, Petitioner was found guilty as charged (*id.* at 6), and was sentenced to consecutive sentences of life with the possibility of parole after 25 years (Count 2), 5 years (Count 1), 20 years (Counts 5 and 8), 10.5 years (Counts 3, 6, and 9), 7.5 years (Count 10), for a cumulative total of life plus 43 years.  (Exhibit C, R.T. 11/13/06 at 48-50; Motion to Dismiss, Doc. 12, Exhibit C, Sentence.)

**B.  PROCEEDINGS ON DIRECT APPEAL**

Petitioner filed a direct appeal through counsel (Exhibit D), arguing a violation of equal protection under *Batson v. Kentucky*, 476 U.S. 79 (1986), based upon the prosecution's exercise of its strikes of jurors.  On July 31, 2008, the Arizona Court of Appeals denied Petitioner's appeal, finding Petitioner failed to meet his burden of showing purposeful discrimination.  (Exhibit E, Mem. Dec.)

Petitioner filed a petition for review by the Arizona Supreme Court, which was denied on December 3, 2008.  (Exhibit E, Order and Mandate 1/26/09.)

**C.  PROCEEDINGS ON POST-CONVICTION RELIEF**

On March 2, 2009, Petitioner filed his Notice of Post-Conviction Relief (Exhibit F).  Counsel was appointed, who on April 14, 2010 filed a Petition for Post-Conviction Relief (Exhibit G), arguing that Petitioner did not receive the correct amount of pre-sentence incarceration credit.

Petitioner filed a Supplemental Petition (Exhibit M) on January 3, 2011,[1] purporting to assert claims of ineffective assistance of trial counsel for failure to raise claims of double jeopardy, and cruel and unusual punishment, and ineffective assistance of appeal and PCR counsel in failing to pursue claims that the sentence improper by the court's failure to consider mitigating circumstances, consideration of improper aggravating factors, and improper imposition of consecutive sentences. The PCR Court declined to consider the filing on the basis that Petitioner was represented by counsel. (Exhibit N, M.E. 1/11/11.)

On January 25, 2011, Petitioner filed a Second Supplemental Pleading for PCR (Exhibit O), asserting a claim of actual innocence. The Court disposed of this filing as "untimely." (Exhibit H, M.E. 3/9/11.)

In the same order, on March 9, 2011, the PCR court summarily dismissed the petition as without merit (Petitioner having presented no more evidence in support of his assertion that he had been held in Mexico for five years on these charges than the court had found insufficient at trial), and because the claim was precluded by Petitioner's failure to raise the claim on direct appeal. (Exhibit H, M.E. 3/9/11.)

On April 6, 2011, Petitioner filed a Petition for Review (Exhibit I), arguing that the PCR court erred when it dismissed his Second Supplemental Pleading.

On May 23, 2011, Petitioner submitted a second Petition for Review, which was returned by the Arizona Court of Appeals unfiled on the basis that Petitioner already had a petition for review pending. (Exhibit L, Letter 5/26/11.)

On January 4, 2013, the Arizona Court of Appeals summarily denied review on the filed petition for review. (Exhibit J, Order 1/4/13.)

On January 25, 2013, Petitioner filed his "Notice to the Record" (Exhibit S1-B) which was construed as a petition for review by the Arizona Supreme Court. (Exhibit S1-C Letter.) (Exhibits to Respondents' Motion to Supplement, Doc. 18, are referenced

---

[1] Petitioner identifies this as his "Third Petition" for post-conviction relief, alleges it was filed on December 28, 2010 (the date of his signature), and denied as untimely on March 9, 2011. (Petition, Doc. 1 at 5.)

herein as "Exhibit S1-___.")  The Arizona Supreme Court summarily denied review on May 14, 2013 (Exhibit K).

## D.  PETITION FOR SPECIAL ACTION

According to Petitioner, he filed a Petition for Special Action with the Arizona Court of Appeals on December 3, 2010, arguing claims of due process, double jeopardy, prosecutorial misconduct, and ineffective assistance of counsel.  (Petition, Doc. 1 at 4.) (*See also* Petition, Exhibits at Petition for Special Action)  He describes this as his "Second Petition" for post-conviction relief.  He asserts the Court of Appeals refused to accept jurisdiction on December 8, 2010.  (*Id.*)

Respondents provide no record of this proceeding.

## E.  PRIOR FEDERAL HABEAS PROCEEDINGS

On December 17, 2010, during the pendency of his PCR proceeding, Petitioner filed with this district a federal habeas petition in case CV-10-2742-PHX-PGR-JRI. That petition was dismissed for failure to utilize the court approved form.

## F.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 5, 2012 (Doc. 1).  Petitioner's Petition asserts the following eight grounds for relief:

> (1) Ineffective assistance of trial counsel, in violation of the Sixth Amendment;
> (2) "Ineffective assistance against appellate counsel as a Confrontation Clause violation";
> (3) "Double jeopardy, in violation of the Fifth Amendment, by double counting factors to sustain numerous consecutive and concurrent terms (*Blakely* infraction)";
> (4) "Due-process violation. (14th Amendment). Petitioner was in need of a defense, that would bring every factor into play, as to av[oi]d the ultimate punishment he has been presented with. This was a quasistacked case against Petitioner";
> (5) "Prosecutorial misconduct" [in opening and closing statements];
> (6) "Constructive Amendment/Structural Error";

5

(7) "Insufficiency of Evidence/Lack of (R.A.J.I.) - Revised Arizona
Jury Instructions"; and
(8) "The (A.B.A.) standards relating to sentencing - that were
ignored by assigned (P.C.R.) counsel."

(Service Order 8/3/12, Doc. 4 at 2.)

**Motions** – On October 31, 2012, Respondents filed their Motion to Dismiss or in the alternative, to Hold in Abeyance (Doc. 12). The Court directed Plaintiff to respond and to show cause why the action should be dismissed under *Younger v. Harris*, 401 U.S. 37, 91 (1971) in light of the ongoing state proceedings. (Order 11/1/12, Doc. 13.) Instead of responding as directed, on November 26, 2012, Petitioner filed a Motion to Hold in Abeyance (Doc. 16). On February 26, 2012, Respondents supplemented (Doc. 18) their Motion by arguing that in the interim the Arizona Court of Appeals had denied Petitioner's Petition for Review, but that Petitioner had since filed a Petition for Review with the Arizona Supreme Court, which remained pending. Respondents again requested dismissal or that the petition be held in abeyance.

**Original Report & Recommendation** - On April 22, 2013, the undersigned filed a Report and Recommendation (Doc. 25) recommending the Petition be dismissed without prejudice, in light of the ongoing state proceedings. On May 22, 2013, Petitioner filed a Notice (Doc. 26) of the Arizona Supreme Court's decision. On September 30, 2013, District Judge Rosenblatt rejected the Report and Recommendation on the basis of that decision, denied the various motions as moot, and referred the matter again for preparation of a new Report & Recommendation in light of the intervening state court proceedings. (Order 9/30/13, Doc. 28.) The undersigned then directed Respondents to file an answer. (Order 10/1/13, Doc. 29.)

**Answer** – On October 22, 2013, Respondents file their response ("Limited Answer") (Doc. 30), arguing that the Petitioner had procedurally defaulted his state remedies on his federal claims.

**Reply** – On November 20, 2013, Petitioner filed his Reply (Doc. 31), conceding procedural default, but arguing that his procedural default should be excused because of the ineffective assistance of appellate and PCR counsel.

6

**Supplements Ordered** - On January 27, 2014, the Court observed that Petitioner's claims of ineffective assistance of PCR counsel, if supported, could excuse his failure to exhaust state remedies on his claims of ineffective assistance of trial counsel.   The Court expressed a tentative conclusion that most of the assertions of ineffectiveness of trial counsel were plainly without merit, but found the record and arguments insufficient to address the allegations that trial counsel had failed to call Petitioner's co-indictee and half-brother, Juan Vasquez, and his brother-in-law and purported co-conspirator, Rafael Rubio (Cuevas) Mendez.   Accordingly, Respondents were directed to supplement the record, and Petitioner was given an opportunity to supplement his reply.  (Order 1/27/14, Doc. 32.)   Petitioner was cautioned that his reply "should be limited to the matters raised in the supplemental answer, and should not be considered an opportunity to simply re-argue or supplement the Petition or Reply."  (*Id.* at 5.)

**Supplemental Answer** – On April 16, 2014, Respondents filed their Supplemental Answer (Doc. 35), arguing that Juan Vasquez had been called to testify at trial, and that the proffered testimony of Rafael Mendez was merely cumulative to the testimony of Petitioner and Juan Vasquez, and thus no prejudice could have resulted from the failure to call Mendez and counsel was not deficient for failing to call Mendez to testify.[2]

**Supplemental Reply** - On May 19, 2014, Petitioner filed his Supplemental Reply (Doc. 38).  Petitioner raises a series of arguments in his Reply asserting new deficiencies by counsel. Petitioner was cautioned that his reply "should be limited to the matters raised in the supplemental answer, and should not be considered an opportunity to simply re-argue or supplement the Petition or Reply."    (Order 1/27/14, Doc. 32 at 5.) Accordingly, the undersigned only considers those arguments relevant to the claims

_____

[2] Respondents attach as Exhibit S-Q the Record of Transcript from May 31, 2006 AM. Page 30 of that transcript appears to have been split into two sections upon scanning, and the halves reversed.  The whole of the page appears to be included, however.  Petitioner has not asserted any deficiency in the record. Thus the undersigned finds such page to be included in its entirety.

addressed in the Supplemental Answer (Doc. 35).

Petitioner argues that trial counsel was ineffective for failing to call Mendez because Mendez's testimony would have corroborated the testimony of Petitioner and Vasquez, and Mendez was "as credible as the four paid witnesses, who were not substantiated by federal and state law enforcement officers." (Doc. 38 at 4.)   Thus, Petitioner argues, Mendez's testimony would have created "a reasonable doubt that did not otherwise exist." (*Id.* at 5.)   He  argues that the state had presented cumulative testimony of twenty-five witnesses. (*Id.* at 6.)  And, he argues that his conviction was based upon the testimony of paid informants, without any other corroboration, and thus the jury assumed Petitioner's guilt based upon a comparison of the number of witnesses called for the prosecution, as opposed to the defense. (*Id* at 6-7.)

## III. APPLICATION OF LAW TO FACTS
### A.  EXHAUSTION AND PROCEDURAL DEFAULT

Respondents argue that Petitioner's claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.  Petitioner does not oppose this conclusion.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th

Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005) (quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 30 at 11.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a

claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments).   For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id*.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later." *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

Exceptions - Rules 32.2 and  32.4(a) do not bar dilatory claims if they fall within

the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz. R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.   Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.  Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief.  Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts

in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

## 3.  Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, - - - U.S. - - -, 131 S.Ct. 1120, 1127 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

## 4. Application to Petitioner's Claims

Petitioner's Reply concedes his procedural default, and addresses only cause and prejudice to excuse the default.

The only claims arguably fairly presented to the Arizona Court of Appeals were Petitioner's challenge to the juror strikes in his direct appeal, and the challenge to his pre-incarceration credits in his PCR proceeding.  Neither are claims raised in this

proceeding.

Petitioner asserted in his Petition, however, that he raised a variety of his federal claims in a Petition for Special Action filed on December 3, 2010 in the Arizona Court of Appeals. (Petition, Doc. 1 at 4.)  He specifically asserts this with regards to Grounds 1, 2, 3, and 4.  (*Id.* at   6-9.)  However, presentation of a claim in such a discretionary-jurisdiction action is not fair presentation and does not result in exhaustion.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding that raising a claim in a procedural context in which the merits would not be considered absent special and important reasons does not constitute fair presentation for purposes of exhaustion); *State ex rel. Romley v. Superior Court*, 198 Ariz. 164, 7 P.3d 970, 972-3 (Ariz.Ct.App.2000) (stating that acceptance of jurisdiction of a petition for special action is discretionary and appropriate when there is no equally plain, speedy or adequate remedy available by appeal, or when the case presents a narrow question of law of statewide importance).

Petitioner also argued in his Petition that he presented his claims in Ground 2, 3, and 4 in his "Third Petition," which was his "Supplemental Petition" (Exhibit M) in his sole PCR proceeding.  This filing was rejected by the PCR court because it was filed directly by Petitioner, and Petitioner was represented by counsel at the time.  (Exhibit N, M.E. 1/11/11.)  Accordingly, this filing did not fairly present any claims.[3]

Petitioner made no allegations in his Petition as to his exhaustion of state remedies on his claims in Ground 5, 6, 7 and  8.  (Petition, Doc. 1 at unnumbered pages between 9 and 10.)

Petitioner argued in his Motion to Hold in Abeyance (Doc. 16) that he asserted various claims to the Arizona Court of Appeals in his "Motion to Apprise the Court of Rule (32) P.C.R. and Petition for Review under the Anti-Terrorism and Effective Death Penalty Act," filed June 21, 2011.  (*See* Motion, Doc. 16 at 2; *id.* at Exhibit BB.)  This,

---

[3] If this "Supplemental Pleading" were deemed to have presented any of Petitioner's federal claims, then they were disposed of on the basis of the state rule precluding hybrid representation, and thus would be subject to a defense of procedural bar under an independent and adequate state ground.  *See Harris v. Reed*, 489 U.S. 255, 260 (1989).

13

filing, however, would not amount to fair presentation.   Moreover, Petitioner has conceded that this was "treated as a motion-to-amend the 1st Petition for Review and [was] dismissed by the Court of Appeals." (*Id.* at 3.)  Accordingly, it did not result in the fair presentation of Petitioner's claims.

      **e.  Summary Re Exhaustion** – Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on all the claims in his habeas petition.

## B.  CAUSE AND PREJUDICE

      Petitioner argues that any procedural default should be excused because such default resulted from the ineffective assistance of counsel.

### 1.  Standard to Excuse Procedural Default

      If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

      "Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues that this Court should find cause to excuse his procedural defaults based on the ineffective assistance of his trial counsel (Reply, Doc. 31 at 3), appellate counsel (*id.* at 4), and PCR counsel  (*id.*).

## 2.  Ineffectiveness of Trial and Appellate Counsel

Cause must ordinarily turn on something external to the defense.  The acts of a petitioner's counsel are not external to the defense and are generally attributable to the petitioner.  *Maples v. Thomas*, 132 S.Ct. 912, 922 (2012),    Where, however, the ineffective assistance of counsel amounts to an independent constitutional violation, it can establish cause.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).

Here, Petitioner's failure to exhaust his state remedies did not occur at trial, but on appeal and in his PCR proceedings.  Accordingly, no ineffectiveness of trial counsel can constitute cause to excuse his procedural defaults.

Further, a claim of ineffective assistance of counsel showing "cause" is itself subject to the exhaustion requirements.  *Murray v. Carrier*, 477 U.S. 478, 492 (1986); *Edwards v. Carpenter*, 529 U.S. 446 (2000).  Accordingly, "[t]o the extent that petitioner is alleging ineffective assistance of appellate counsel as cause for the default, the exhaustion doctrine requires him to first raise this ineffectiveness claim as a separate claim in state court."  *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988).

Here, Petitioner did not properly exhaust his state remedies on any claim of ineffective assistance.

## 3.  Ineffectiveness of PCR Counsel

Where no constitutional right to an attorney exists, ineffective assistance will not amount to cause excusing the state procedural default.  *Ortiz*, 149 F.3d at 932. "Because there is no right to an attorney in state post-conviction proceedings, there cannot be constitutionally ineffective assistance of counsel in such proceedings." *Patrick Poland v. Stewart*, 169 F. 3d 573, 588 (9th Cir. 1999) (quoting *Coleman v. Thompson*,

501 U.S. 722, 752 (1991)).   Consequently, any ineffectiveness of PCR counsel will ordinarily not establish cause to excuse a procedural default.

However, the Supreme Court has recognized two exceptions concerning the ineffectiveness of PCR counsel.

<u>Abandonment</u> - First, in *Maples v. Thomas*, 132 S.Ct. 912 (2012), the Court held that where PCR counsel is not merely negligent or ineffective, but actually abandons the representation of the petitioner, then the attorney is no longer acting as the agent of the petitioner, and his actions may establish cause to excuse a procedural default.  In *Maples*, the purported PCR counsel had left their employment in which they had represented the petitioner while awaiting the trial court's ruling, had both accepted employment precluding their representation of the petitioner, and had not moved to withdraw or provided other notice that they no longer were representing Petitioner, thus allowing the time for further review to lapse after the trial court's ruling.   Here, however, Petitioner makes no assertion that his PCR counsel abandoned him, but rather only that counsel failed to investigate, to follow the requests of Petitioner, and to present the claims he now seeks to raise.

<u>PCR Claims re Ineffectiveness of Trial Counsel</u> - Second, in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Court held: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 1315.  For Petitioner to rely upon *Martinez*, Petitioner must "demonstrate[d] two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'" *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012)  (quoting *Martinez*, 132 S.Ct. at 1318).

In many instances the two *Martinez* prongs are so intertwined that they will be subsumed into one analysis focused on one or the other prongs, *i.e.* trial counsel's

16

performance or PCR counsel's performance.  There remains, however, a clear distinction between the prongs.  For example, there are gradations of the potential for success, and ultimate effect, of the foregone tactic.  Some underlying claims will be so attractive that trial counsel was clearly ineffective, and thus (barring inability to discover, or other impediments), PCR counsel was clearly ineffective in not raising it.  Others may be so clearly meritless that both trial and PCR counsel were obviously not ineffective in avoiding the claim.  And there may be still others, in the middle ground, that are substantial enough that (while perhaps not guaranteed of success) they require a determination whether PCR counsel had other tactical reasons to raise or not raise  the claim, *i.e.* the availability or absence of other, more attractive, claims, or whether PCR counsel was otherwise acting reasonably in foregoing the claim.

### 4.  *Strickland* Standard for Ineffectiveness

Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  In order to prevail on such a claim, petitioner must show:  (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 687 88, 694.  Although the petitioner must prove both elements, a court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial.  *Id*. at 697.

In determining whether counsel performed deficiently, the court must focus on whether the attorney's actions were appropriate under the circumstances existing at the time.  *See Strickland*, 466 U.S. at 690. Moreover, there is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy. *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). The court should "presume that the attorneys made reasonable judgments and decline to second

1   guess strategic choices." *United States v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

2          To establish prejudice, a petitioner "must show that there is a reasonable

3   probability that, but for counsel's unprofessional errors, the result of the proceeding

4   would have been different. A reasonable probability is a probability sufficient to

5   undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

6          Cursory allegations that are purely speculative cannot support a claim of

7   ineffective assistance of counsel. *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir.),

8   *cert. denied*, 493 U.S. 869 (1989).   Thus, for example, a defendant cannot satisfy the

9   *Strickland* standard by "vague and conclusory allegations that some unspecified and

10   speculative testimony might have established his defense." *Zettlemoyer v. Fulcomer*,

11   923 F.2d 284, 298 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991).   Here, Plaintiff's

12   assertions of defective performance are mere vague and conclusory allegations.

13

14   **5.  Application to Petitioner's Claims of Ineffectiveness of Trial Counsel**

15          Here, Petitioner presents one claim of ineffective assistance of trial counsel, that

16   is his claim in Ground One that counsel performed deficiently by:

17              (1) failing to file a special action after his motion to remand to the grand

18          jury was denied;

19              (2) failing to adequately cross-examine and impeach witnesses;

20              (3) failing to make contemporaneous objections to preserve issues for

21          appeal;

22              (4) failing to oppose Petitioner's sentences as cruel and unusual

23          punishment;

24              (5) failing to file a motion for new trial when requested to do so;

25              (6) failing to present a complete defense;

26              (7) failing to assert Petitioner's rights under a treaty with Mexico

27          precluding a life sentence; and

28              (8) acting as a neutral observer rather than a an advocate.  (Petition, Doc. 1

at 7.)

     **a. Remand to Grand Jury** - In his **first** allegation, Petitioner argues trial counsel should have filed a special action to challenge the trial courts' refusal to remand the case to the grand jury.  Petitioner does not suggest what grounds would have supported such a special action.  In his own Petition for Special Action in his PCR proceeding, Petitioner argued that the supervening indictment against him was founded upon perjured testimony, requiring a remand to the grand jury.  (Petition, Doc. 1, Exhibits, Pet. Spec. Act. at 8.)  However, such a claim need not have been raised by special action, but could have been raised on direct appeal.  *State v. Gortarez*, 141 Ariz. 254, 258, 686 P.2d 1224, 1228 (1984).  Thus, no prejudice would have resulted from trial counsel's failure to raise such a claim in a special action, and PCR counsel would not have been performing deficiently in failing to assert a claim of ineffectiveness of trial counsel.

     Petitioner also argued that he was improperly denied a preliminary hearing, as required under the Arizona Rules.  (Petition, Doc. 1, Exhibits, Pet. Spec. Act. at 8.)  However, "[a] supervening indictment eliminates a defendant's right to a preliminary hearing on a prior complaint."  *Segura v. Cunanan*, 219 Ariz. 228, 234, 196 P.3d 831, 837 (Ariz.App. ,2008).

     This claim has no merit.

     **b.  Cross-Examination** - With regard to his **second** allegation, Petitioner does not identify what additional cross-examination or impeachment should have been pursued, nor why it would have changed the outcome of the trial.  This claim is conclusory and without merit.

     **c.  Objections** - With regard to his **third** allegation, Petitioner does not identify what objections should have been raised nor how they would have avoided conviction.  This claim is conclusory and without merit.

**d. Cruel and Unusual Punishment** - In his **fourth** allegation, Petitioner does not identify why his sentence was cruel and unusual punishment.  For example, Petitioner does not suggest whether his claim is that life imprisonment is generically cruel and unusual punishment.  Nor does he suggest that his claim is that his sentences were grossly disproportionate to his crimes.  He was convicted of conspiracy to commit armed robbery, first-degree murder, aggravated assault, kidnapping, and attempted armed robbery." (Exhibit E, Mem. Dec. 1/31/08 at 2.)  His most onerous sentence was life with possibility of parole on his first-degree murder conviction.  Even harsher sentences have been found to not be grossly disproportionate for similar crimes.  *See e.g. Tanner v. McDaniel*, 493 F.3d 1135 (9th Cir. 2007) (life sentence *without* parole for first degree murder).

Nor does Petitioner suggest that the failure to challenge the sentence was an error of trial counsel, as opposed to appellate counsel.

This claim is conclusory and without merit.

**e.  Motion for New Trial** - In his **fifth** allegation, Petitioner fails to proffer a basis for a motion of new trial.  And, mere failure to undertake requested action is not deficient performance. "An attorney undoubtedly has a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy. That obligation, however, does not require counsel to obtain the defendant's consent to 'every tactical decision.'" *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (identifying exceptions as entry of guilty plea, waiving a jury, testifying, or whether to appeal) (citations omitted).

This claim is conclusory and without merit.

**f.  *Cronic* Failure to Defend** - With regard to his **sixth** and **eighth** allegations, Petitioner assets that counsel failed to present a complete defense and functioned as a

neutral observer. Such claims are a unique breed of ineffectiveness claim. On the same day that *Strickland* was handed down, the Supreme Court also established an exception to the deficient and prejudicial performance standard by holding that certain circumstances in a criminal trial are so likely to prejudice the accused that no actual showing of prejudice need be made; ineffective assistance is presumed. *United States v. Cronic*, 466 U.S. 648 (1984). In *Cronic*, the Court identified two circumstances as being presumably prejudicial: the accused being denied criminal counsel at a critical stage of his trial or counsel entirely failing to subject the prosecution's case to meaningful adversarial testing. 466 U.S. at 659.

Petitioner makes no allegations that he was ever denied counsel at a critical stage, thus the first alternative under *Cronic* does not apply.

The second alternative applies not just where counsel failed to undertake various actions, but where counsel did little more than appear. "When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete." *Bell v. Cone*, 535 U.S. 685, 696-97 (2002). The Ninth Circuit has interpreted the second alternative under *Cronic* as applying only "where there has been an actual breakdown in the adversarial process at trial." *Toomey v. Bunnell*, 898 F.2d 741, 744 n. 2 (9th Cir.), *cert. denied*, 111 S.Ct. 390 (1990). The Circuit has found such a breakdown and presumed prejudice to result when: (1) defense counsel has conceded that there is no reasonable doubt concerning the only factual issues in dispute, *United States v. Swanson*, 943 F.2d 1070, 1073 (9th Cir.1991); (2) when counsel has slept through a portion of the trial, *Javor v. United States*, 724 F.2d 831, 834-35 (9th Cir.1984); or (3) counsel has uttered racial epithets at his client and threatens to be very ineffective if he insists on going to trial, *Frazer v. United States*, 18 F.3d 778, 785 (9th Cir.1994).

On the other hand, while complete failure to defend a criminal case is ineffective assistance, the constitution does not require counsel to manufacture a defense where none exists. *See U.S. v. Hamilton*, 792 F.2d 837 (9th Cir. 1986). The sixth amendment

21

does not require counsel to invent a defense." *Haynes v. Cain*, 272 F.3d 757, 764 (5th Cir. 2001), *rehr'g granted on other grounds* 284 F.3d 604 (5th Cir. 2002).

Here, Petitioner fails to show that trial counsel failed to mount a defense.  To the contrary, trial counsel: filed a motion to suppress various evidence (Exhibit S-II, R.T. 2/15/06); conducted voir dire of the jury panel (Exhibit S-A, R.T. 5/2/06); argued that the state had improperly struck all jury panel members of Latin or African-American descent (Exhibit S-B, R.T.5/3/06); presented a detailed and cogent opening statement (Exhibit S-C, R.T. 5/8/06 at 39 *et seq.*); cross examined the prosecution's witnesses (Exhibits S-C, R.T. 5/8/06, through S-Y, R.T. 6/7/06 PM); called witnesses for the defense, including a crime scene investigator, Lawrence Renner (Exhibit S-Y, R.T. 6/7/06 PM at 40, *et seq.*), Sheriff's Detective Gonzales (*id.* at 103, *et seq.*), Juan Vasquez (Exhibits S-Z, R.T. 6/8/06, S-AA, R.T. 6/8/06, and S-DD, R.T. 6/26/06 PM), and Petitioner (Exhibits S-DD, R.T. 6/26/06 PM and S-EE, R.T. 6/27/07); made and renewed a motion for directed verdict (Exhibit S-Y, R.T. 6/7/06 PM at 20; Exhibit S-EE, R.T. 6/27/06 at 85); argued for jury instructions on lesser included offenses, self defense and destruction of evidence, and alterations in the reasonable doubt and felony murder instructions (Exhibit S-BB, R.T. 6/15/06); sought modifications in the forms of verdict (*id.* at 25); moved for a dismissal and mistrial based on comments to the media by the prosecution on the evidence (Exhibit S-CC, R.T. 6/26/06 AM); cross-examined the state's rebuttal witnesses (Exhibit S-FF, R.T. 6/28/06 AM); presented a detailed and cogent closing argument (Exhibit S-GG, R.T. 6/29/06 AM); and requested polling of the jury (Exhibit S-LL, R.T. 8/8/06).

In his Petition, Petitioner points to nothing further that counsel should have done. In his Reply, Petitioner adds arguments that counsel failed to call Petitioner's co-indictee and brother, Juan Vasquez, and his brother-in-law and purported co-conspirator, Rafael Rubio (Cuevas) Mendez.  (Reply, Doc. 31 at 2.)  Petitioner supplies affidavits from these two witnesses, dated April 2013, purporting to serve as an alibi for Petitioner.  (*Id.* at Exhibits R-A (J.Vasquez Affid.) and R-B (R.Mendez Affid.).)

22

Failure to Call Vasquez - As pointed out by Respondents (Supplemental Answer, Doc. 35 at 14), counsel did, in fact, call Juan Vasquez to testify.  Defense counsel elicited testimony from Vasquez that: Mendez (nicknamed "Filo")[4] was a cousin to Vasquez (Petitioner's half-brother), and had been Vasquez's co-defendant in the case surrounding the same events as the instant case, and was in prison.  (Exhibit S-Z, R.T. 6/8/06 at 26.)    Petitioner and Mendez had been living together in Arizona.  Mendez contacted Vasquez to attempt to arrange a drug deal for the Fenior brothers. (*Id.* at 28-30.)   Mendez and Vasquez planned a robbery together.  (*Id.* at 31-32.)  Vasquez flew to Phoenix from California, called to talk to Mendez, who wasn't there so Petitioner answered.  He asked Petitioner to give him a ride from the airport to Petitioner's home. He waited at the home about an hour for Mendez.  When Mendez arrived, the two of them went to a vacant bedroom, and talked about stealing $160,000 from the Feniors' drug buyer in an armed robbery, using two weapons and some handcuffs that Mendez had provided. (*Id.* at 33-40.)    Petitioner had known nothing about the plan, and had no role in it.  (*Id.* at 40.)    (Although the defense proffered testimony from Vasquez that Petitioner learned of the plan before Mendez and Vasquez left the home, the trial court precluded the evidence for lack of foundation. (*Id.* at 45-46.)) Before Vasquez and Mendez left the home, Vasquez and Petitioner argued and Petitioner called him crazy. (Exhibit AA, R.T. 6/8/06 at 4.)    Vasquez had never been to the auto shop before the afternoon of the shooting.  (*Id.* at 7.)

In comparison, the declaration of Vasquez presented by Petitioner consists primarily of unsupported assertions that Petitioner had been accused because his partners in the auto repair business, the Fenior brothers, wanted to get the business away from Petitioner, and various aspersions on the conduct of the DEA, and co-indictee Eduardo Aceves Vasquez, who testified for the prosecution.   The only relevant first-hand knowledge presented in the declaration is that Petitioner was not present "there on the place when the crime happen not at the moment when the thing happen, he was on his

---

[4] Mendez was named in the Indictment as "August Cuevas Cordova." (Exhibit A.)

1  house all day while Rafael and me doing our business."  (Reply, Doc. 31, Exhibit A.)

2  The pertinent parts of that testimony were presented at trial.  Accordingly, this portion of

3  a claim of ineffective assistance would have been without merit.

4      <u>Failure to Call Mendez</u> - Trial counsel did not, however, call Mendez to testify at

5  trial.   Mendez's statement[5]  is a bit more expansive than that from Vasquez, although

6  much of it is dedicated to the progress of Mendez's dealings with the Feniors.  (Reply,

7  Doc. 31, Exhibit B.)   In pertinent part, he asserts that Petitioner was not part of the

8  homicide of Agent Fass, that Mendez made the drug deal directly with the Feniors, while

9  Mendez was working at the shop, and that it was his idea to rob the Feniors' buyer.  He

10  asserts that the plan was between he and "Juan" Vasquez, and that they decided not to

11  tell Petitioner because he would not agree to participate, and was part owner of the shop

12  and knew too much. (*Id* at 2.) The Feniors attempted to convince Mendez to include

13  Petitioner, but Mendez declined because Vasquez was "a real serious person and didn't

14  want to have too many people involved."  (*Id.* at 3.)

15      Mendez relates that on the day before the shooting, after Petitioner had left, he

16  met with the Feniors and Fass.  The day of the shooting, Vasquez arrived, and they met

17  with the Feniors and finalized the details and came to an agreement.  Vasquez told

18  Mendez he had brought his brother-in-law "Lalo"[6] to help.  They planned that after they

19  saw the money, they would call "Lalo" that was supposed to have the drugs.  Instead, the

20  agent was carrying a hidden weapon, they got scared and tried to subdue him, and then

21  the shooting began. (*Id* at 4-5.)   He asserts that Petitioner "never knew about our

22  business."  (*Id.* at 6.)

23      Mendez also includes various assertions about why Mendez wanted to conduct

24  the robbery, why "Lalo" and the Feniors agreed to testify against them, why he refused

---

[5] The original statement is in Spanish, and bears the signature of "Rafael" and a notary seal without evidence of it being given under oath.   The undersigned assumes, for purposes of this Report & Recommendation that the translation provided by Petitioner is accurate, and that the statement is the evidentiary equivalent of a declaration or affidavit.
[6] "Lalo" is the nickname of Petitioner's co-indictee Eduardo Aceves, the boyfriend of Vasquez's sister, and a prosecution witness.  (Exhibit S-Z, R.T. 6/8/06 at 21.)

24

1   to testify for the prosecution, and how he was under the effects of pain medication when

2   he was questioned by the DEA, etc.

3       The core of Mendez's testimony is cumulative to that of Vasquez, *i.e.* that

4   Petitioner was not part of the planned robbery.

5       Respondents seem to suggest that an ineffective assistance claim can never be

6   based upon the failure to call a witness whose testimony might be cumulative to the

7   testimony of other witnesses.  (Supp. Ans. Doc. 35 at 14-15.)  The cited cases do not

8   support such a conclusion.  For example, in *United States v. Pierce*, 62 F.3d 818, 833

9   (6th Cir. 1995), the court simply concluded that the defendant had failed to show

10  deficient performance where "counsel did not present every witness because many were

11  cumulative or unreliable."  Similar fact based determinations were made in *Babbitt v.*

12  *Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998); *Clabourne v. Lewis*, 64 F.3d 1373, 1382

13  (9th Cir. 1995); and *United States v. Schaflander,* 743 F.2d 714, 718-19 (9th Cir. 1984).

14      Indeed, determining ineffective assistance is not generally subject to such bright-

15  line rules, but requires an evaluation of counsel's conduct and its results based upon the

16  totality of the circumstances.  For example, in *Roe v. Flores-Ortega*, the Supreme Court

17  rejected a bright line rule of the First and Ninth Circuits that failure to file a notice of

18  appeal unless specifically instructed not to do so was ineffective assistance.  "We reject

19  this *per se* rule as inconsistent with *Strickland's* holding that 'the performance inquiry

20  must  be  whether  counsel's  assistance  was  reasonable  considering  all  the

21  circumstances.'"528 U.S. 470, 478 (quoting *Strickland*, 466 U.S. at 688).

22      Accordingly, this Court must evaluate whether, in the specific context of this

23  case, counsel was deficient and Petitioner prejudiced by the failure to call Mendez, even

24  though his testimony might have been, at least in some aspects, the same as that of other

25  witnesses.  Such cumulativeness may be a factor in that evaluation, but it is not

26  determinative.

27      Indeed, the value of cumulative evidence is a sliding scale. *See e.g.   The*

28  *Blaancing Test – Needless Presentation of Cumulative Evidence*, 22A Fed. Prac. & Proc.

Evid. § 5220 (1st ed.) (discussing considerations under Fed. R. Evid. 403).  For example, the word of one more honest man in the face of testimony from two honest men may be of no consequence in a trial.  On the other hand, the word of one honest man in the face of the testimony of a hundred scoundrels may be critical.  Thus, in evaluating the significance of cumulative testimony, it is appropriate to consider such things as the centrality of the omitted testimony to the defense, the credibility of the omitted witness as opposed to those who testified on the same matters, and the risks attendant to the introduction of the omitted witness and their testimony.

Here, Mendez's testimony was not cumulative to a host of witnesses, but only to that of Vasquez and Petitioner.  Nor was it on a peripheral matter, but upon the lynchpin of the prosecution's case: that Petitioner was at the center of the robbery plan.

Petitioner, of course, bore the credibility disadvantage of being the defendant, making corroboration of his protestations of innocence meaningful.  *See e.g. Towner v. State,* 685 P.2d 45, 50 (Wyo.1984) (error to exclude only testimony corroborative of defendant's testimony on material fact). On the other hand, Vasquez and Mendez bore similar constraints on their credibility.  They were each merely accepting corporate responsibility, exclusive of Petitioner, for criminal acts for which they had long ago been convicted.  Moreover, each had a familial tie with Petitioner.  Thus, from a credibility standpoint, Mendez was a significant addition to the testimony of Petitioner, but not as great an addition as he might have been in the absence of testimony from Vasquez.

Moreover, Mendez's statement was not entirely repetitious, but in one crucial respect to Petitioner's detriment. Mendez asserts that Petitioner was never aware of the robbery plan, etc.  Trial counsel attempted to introduce testimony at trial from Vasquez that before the robbery occurred that Petitioner had been informed of the plan and had objected to it, calling Vasquez "crazy."  Petitioner testified that he had learned of the robbery plan from "Lalo" and tried to talk Vasquez out of it.   (Exhibit S-DD, R.T. 6/26/06 PM at 64-66.)

Based upon these statements of Vasquez and Mendez, trial counsel would have

been faced with two conflicting descriptions of events on the core issue of whether Petitioner was aware of the planned robbery.   Thus, trial counsel could have made a reasonable strategic decision to present only one version of the events and to present the more explicit testimony by Vasquez that Petitioner actually became aware of the plan, and urged them to not proceed.[7]

Even if trial counsel could have found a way to present the core testimony of both witnesses without further reducing their credibility (an unlikely scenario, given the prosecution's right of cross-examination), the cumulative nature of Mendez's statements on the key fact of consequence (Petitioner's involvement), in light of the other incriminating testimony, also precludes a finding of prejudice from the decision to only call Vasquez.

For example, the prosecution presented testimony of <u>Waldemar Fenior</u> that Petitioner had presented himself to the Feniors as a drug dealer, and had instigated the sale of methamphetamine through the Feniors.  (Exhibit S-E, R.T. 5/9/06 at 28.)   Fenior testified that Petitioner ("Fernando") met with Fenior and Agent Fass to discuss the purported sale of drugs, setup the delivery for the next day, and agreed that after the presentation of the money, Petitioner would be called and bring the drugs.  (*Id.* at 32, 42-46.)

The prosecution presented testimony of co-indictee <u>Eduardo Aceves</u> that Petitioner called Vasquez and asked him to do a rip-off, and that Aceves and Vasquez flew to Phoenix that day, where Petitioner picked them up from the airport and discussed

---

[7] It is true that because of objections from the prosecution, counsel eventually struggled at trial to elicit Vasquez's testimony about Petitioner calling them "crazy" for pursuing the robbery.   However, strategic decisions such as choosing between conflicting witnesses must often be made in advance of trial, although the risks of untoward results at trial (*e.g.* such evidentiary objections) cannot be eliminated.  *See* Ariz. R. Crim. P. 15.2(c) and 15.6(d) (disclosure of trial witnesses and final deadline). Here, the objection was that Vasquez lacked foundation to testify that Lalo had told Petitioner about the plan.  (Exhibit S-Z, R.T. 6/8/06 at 45-46.)   Trial counsel could have assumed when planning the witnesses to be called at trial that the relevant information, *i.e.* that Petitioner was aware of the plan, could have been presented based on Petitioner's statements to Vasquez, and thus have survived an objection based upon foundation. Once committed to proceeding with Vasquez, counsel could not jump ship to Mendez without risking the introduction of the conflicting accounts.

the robbery plan, that Petitioner agreed to pay Vasquez $15,000 for his part in the robbery, Petitioner supplied them with the weapons and handcuffs and directed the preparation of the fake drugs, and drove Vazquez to the autoshop. (Exhibit S-O, R.T. 5/30/06 at 25-26; Exhibit S-P, R.T. 5/30/06 at 4-25.)

The prosecution presented testimony of <u>Joaquin Fenior</u> that Petitioner ("Fernando") was present the day of the shooting, but left with the understanding that he would return after the buyer (Agent Fass) came with the money.  While they waited, Petitioner called repeatedly to see if the buyer had come yet.  After the buyer appeared with the money, they called Petitioner and Fenior's brother and one of the other men talked to Petitioner to tell him they had seen the buyer's money. (Exhibit S-V, R.T. 6/5/06 PM at 17-25.)

The prosecution presented testimony of <u>Adela Lopez</u> that she was the girlfriend of Juan Vasquez, and that Petitioner came to their home and asked Vasquez to handle a drug exchange at the mechanic ship for $120,000, that "Filo" would be with him, and Petitioner would provide the weapons.  (Exhibit S-W, R.T. 6/6/06 AM at 118-135.) Petitioner explained that there weren't going to be any drugs and they were just going to take the money, but Petitioner was not going to go because they already knew him. (Exhibit S-X, R.T. 6/7/06 AM at 8.)

Petitioner attempts to argue away the credibility of these witnesses, pointing to the Feniors' status as paid informants and motive to regain Petitioner's interest in their auto shop, to the minimal sentence Aceves received under a plea agreement, and his receiving immigration favors, and to Adela Lopez receiving immigration favors.  (Supp. Reply, Doc. 38 at 2-3.)  The statement by Mendez supports many of those allegations, albeit without any foundation for Mendez's knowledge.  However, most of those same arguments were presented to the jury.  Trial counsel argued: Waldemar and Joaquin Fenior's status as paid informants (Exhibit GG R.T. 6/29/06 at 70-71); the plea agreement and immigration benefits given to Aceves (Exhibit GG R.T. 6/29/06 at 68); and Lopez's immigration status.  (Exhibit GG R.T. 6/29/06 AM at 36, 72).  The jury

1  nonetheless convicted Petitioner.

2      To establish prejudice, Petitioner "must show that there is a reasonable

3  probability that, but for counsel's unprofessional errors, the result of the proceeding

4  would have been different. A reasonable probability is a probability sufficient to

5  undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  In light of the

6  foregoing, the undersigned cannot say that such a probability exists.

7      Accordingly, the undersigned cannot say that the claim regarding trial counsel's

8  failure to call Mendez has merit.

9      Even if the undersigned could conclude that there was "some merit" to this claim,

10  the undersigned cannot conclude that it was so significant that PCR counsel was

11  performing unreasonably by failing to assert the claim.  Reasonable PCR counsel could

12  have evaluated the claim and reached the determination that trial counsel was not

13  deficient in failing to call Mendez to testify and/or the determination that no prejudice

14  could have been shown the failure to call Mendez.

15      Communication Concerns - Finally, Petitioner also presents his own affidavit

16  asserting that trial counsel failed to explain his case to him, that they couldn't understand

17  each other, he didn't know the details of his case, and did not know what was in his

18  papers.  (Reply, Doc. 31 at Exhibit R-F.)  However, Petitioner fails to suggest how any

19  such failures by trial counsel hampered his defense at trial, or how the outcome of the

20  proceeding would have been different had he had effective communication and more

21  information.  This claim is conclusory and without merit.

22      Not *Cronic* Types of Failures – Moreover, Petitioner's allegations that trial

23  counsel failed to  call Vasquez and Mendez and failed to adequately communicate with

24  Petitioner do not represent the types of complete failures of representation with the

25  contemplation of *Cronic*.

26      Accordingly, Petitioner has failed to show that PCR counsel was ineffective in

27  failing to bring the claims asserted in Petitioner's sixth and eighth allegations of

28  ineffectiveness of trial counsel.

**g.  Mexican Treaty** - In his **seventh** allegation, Petitioner argues trial counsel should have asserted Petitioner's rights under a treaty with Mexico precluding a life sentence.   While Article 8 of the U.S.-Mexico Extradition Treaty does preclude extradition in cases involving the death penalty, it does not address life sentences. Extradition Treaty, May 4, 1978, U.S.-Mex., 31 U.S.T. 5059 (effective Jan. 25, 1980).

Nonetheless, it is true that the Supreme Court of Mexico has held that natural life in prison is "unusual or extreme punishment" and that extradition may be denied by the Mexican government where a life sentence may be imposed.  *See* Rodrigo Labardine, *Life Imprisonment and Extradition: Historical Development, International Context, and the Current Situation in Mexico and the United States*, 11 Sw. J.L. & Trade Am. 1, 52 (2005).  *See also U.S. v. Corono-Verbera*, 509 F.3d 1105, 1121 (9th Cir. 2007).

However, Petitioner's sentence was life ***with*** the possibility of parole, taking it outside the Mexican prohibition on sentences for natural life.  .  *See* Labardine, 11 S.W. J.L. & Trade Am. 1, at notes 339, 606 and surrounding text. Indeed, the extradition documents appended to the Reply reflect the agreement of the State of Arizona that Petitioner would not be sentenced to a natural life sentence.  (Reply Doc. 31, Exhibit R-D).[8]  Granted, Petitioner's consecutive sentences might extend beyond his expected life span, even if granted parole.  But sentences which simply extend beyond a defendant's normal life expectancy are not prohibited under the treaty with Mexico.  *See Aguirre v. Janda*, 2013 WL 3147164, 18 (C.D.Cal. 2013).

This claim is without merit.


**h.  Summary re Ineffectiveness of PCR Counsel** – Petitioner has failed to show that PCR counsel was ineffective in failing to bring Petitioner's proffered claims of ineffective assistance of trial counsel.  Accordingly, Petitioner's procedural default of

---

[8]  The documents supplied by Petitioner reflect an agreement that "if the court nevertheless imposes a sentence of natural life imprisonment, the State of Arizona will take appropriate action to formally request that the court impose a sentence of a term of years."  (Reply, Doc. 31, Exhibit R-D.)  Here, however, Petitioner did not receive a natural life sentence, but life with the possibility of parole.

1  such claims cannot be excused.

2

3  **6. Summary re Cause and Prejudice**

4      Based upon the foregoing, the undersigned concludes that Petitioner has failed to

5  establish cause to excuse his procedural defaults.

6      Both "cause" and "prejudice" must be shown to excuse a procedural default,

7  although a court need not examine the existence of prejudice if the petitioner fails to

8  establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945

9  F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his

10  procedural default.  Accordingly, this Court need not separately examine the merits of

11  Petitioner's claims or the purported "prejudice" to find an absence of cause and

12  prejudice.

13

14  **C.  ACTUAL INNOCENCE AS CAUSE**

15      The standard for "cause and prejudice" is one of discretion intended to be flexible

16  and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v.*

17  *Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly,

18  failure to establish cause may be excused "in an extraordinary case, where a

19  constitutional violation has probably resulted in the conviction of one who is actually

20  innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although

21  not explicitly limited to actual innocence claims, the Supreme Court has not yet

22  recognized a "miscarriage of justice" exception to exhaustion outside of actual

23  innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at

24  1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to

25  claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

26      A petitioner asserting his actual innocence of the underlying crime must show "it

27  is more likely than not that no reasonable juror would have convicted him in the light of

28  the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327

31

(1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id*. at 329.  This standard is referred to as the "*Schlup* gateway*.*"  *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

To be credible, an actual-innocence claim must be supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.  Such evidence may have be "new" either because it was available at the time of trial but was not presented to the jury, or because it was not available at the time of trial.

Here, Petitioner clearly asserts his innocence of his crime.  The only "new" evidence proffered by Petitioner is the statement of co-indictee  Mendez. The statement of Mendez cannot be said to be a *trustworthy* eyewitness acoount. Given the familial relationship between Mendez and Petitioner, and their mutual incarceration on the same series of events, Mendez bears little indicia of credibility.  Moreover, for the reasons discussed hereinabove in connection with cause and prejudice, the undersigned cannot find that in light of Mendez's statements, no reasonable juror would have convicted Petitioner.

Accordingly, Petitioner has failed to show his actual innocence so as to avoid the effects of his procedural defaults.

Therefore, all of Petitioner's claims are procedurally defaulted, and the Petition must be dismissed with prejudice.

### IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28

U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds.  To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein,  the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling."  Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.


## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** Petitioner's Petition for Writ of Habeas Corpus, filed June 5, 2012 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that to the extent the reasoning of this Report & Recommendation is adopted, that a certificate of appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: July 30, 2014

12-1189r RR 14 01 22 on HC.docx

James F. Metcalf
United States Magistrate Judge

34